IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GARY L. JOHNSON,            )
                            )
           Petitioner,      )
                            )
     v.                     )     1:08CV789
                            )
TRAVIS OUTLAW,              )
                            )
           Respondent.      )

**ORDER, MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On September 24, 2007, in the Superior Court of Guilford County, Petitioner pled guilty to breaking and entering and larceny, while being a habitual felon, in cases 07 CRS 88156 and -24504. He was then sentenced, in accord with the exact terms of his plea bargain, to 90-117 months of imprisonment. Petitioner did not file a direct appeal, but did submit two pro se motions for appropriate relief in the state trial court on October 2, 2007, and July 1, 2008. The motions were denied on November 2, 2007, and August 8, 2008, respectively. Petitioner attempted to receive a writ of certiorari from the North Carolina Court of Appeals, but this was denied on September 16, 2008. Petitioner then filed his habeas petition in this Court. Respondent seeks summary judgment, while Petitioner has filed a motion requesting discovery and a motion to submit certain state court documents.

### Claims in the Petition

Petitioner raises six claims for relief in the petition. His first claim is for ineffective assistance of counsel. In that claim, he makes several different allegations of deficient performance by his former attorney. Petitioner's second claim for relief alleges that the prosecutor in his case exercised unconstitutional discretion in charging Petitioner as a habitual felon. Petitioner's remaining claims are similar. He asserts that his indictment as a habitual felon offends the prohibition against double jeopardy (claims three and four), that the selective use of the habitual felon law violates equal protection rights (claim five), and that the punishment imposed as a result of the habitual felon indictment violates the constitutional prohibition against cruel and unusual punishment (claim six).

### Standards of Review

If the Court finds that Petitioner's claims were adjudicated by the state courts on their merits, it must then apply 28 U.S.C. § 2254(d)'s highly deferential standard of review to petitioner's claims. That statute states that habeas relief cannot be granted in cases where a state court has considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as set out by the United States Supreme Court or the state court decision was based on an unreasonable determination of the facts. A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme]

Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. "Unreasonable" is not the same as "incorrect" or "erroneous" and the reasonableness of the state court's decision must be judged from an objective, rather than subjective, standpoint. Id. at 409-411. A holding is not reasonable simply because precedent written by one of the Nation's jurists agrees with it. Id. at 410. As for questions of fact, state court findings of fact are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Here, Petitioner's claims were raised in some form in his motions for appropriate relief. They were denied, at least alternatively, on their merits by the state trial court. (Docket No. 11, Exs. 4, 6.) For this reason, the deferential standards just set out will be applied to all of Petitioner's claims.

## Discussion

Petitioner's first claim for relief is one for ineffective assistance of counsel. In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys

-3-

and, second, that he was prejudiced by this performance. See Strickland v. Washington, 466 U.S. 668 (1984). Petitioner is not entitled to a hearing based upon unsupported, conclusory allegations. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) (in order to obtain an evidentiary hearing a habeas petitioner must come forward with some evidence that the claim might have merit), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999). A petitioner bears the burden of affirmatively showing deficient performance. See Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). To show prejudice following a guilty plea, a petitioner must establish that there is a reasonable probability that but for counsel's allegedly deficient conduct, he would not have pled guilty but would have gone to trial. Hill v. Lockhart, 474 U.S. 52 (1985).

Petitioner makes several allegations of ineffective assistance of counsel, none of which entitle him to relief. These claims, at least in some form, were raised in his motions for appropriate relief in the state courts. The state trial court addressed and rejected them on their merits.

Petitioner alleges in his petition that his attorney was deficient because: (1) he had a conflict of interest, (2) he did not have sufficient contact with Petitioner, (3) he waived Petitioner's "critical stage" proceedings, (4) he did not spend adequate time preparing the case, (5) he did not raise any "defense or discrimination issue," (6) he did not advise Petitioner of his right to appeal, and (7) he interfered with Petitioner's due

process rights. (Docket No. 2 at 6.) Petitioner seeks to use these allegations to attack his guilty plea as being unknowing or involuntary.

As set out in the petition itself, Petitioner's claims are entirely conclusory. Indeed, they are so conclusory that some of them are hard to even understand. They are really just legal terminology without any context to give them meaning. Petitioner does not demonstrate that he was prejudiced by any of counsel's alleged deficiencies by explaining in the petition why he would not have pled guilty but for counsel's actions.

In Petitioner's response brief, he makes his claims more specific and detailed, but he still cannot prevail. First, Petitioner contends that, even though he was facing 522 months in prison, which amounted to a life sentence, he was never visited by counsel or informed of these penalties until the day he pled guilty. If true, this would be unfortunate, but Petitioner has not shown prejudice. He does not explain why earlier notice of the severe penalties that he faced would have caused him not to plead guilty. Once he learned of the penalties and the offer to allow him to plead guilty and receive a sentence of 90 to 117 months, he reasonably accepted that offer. His sentence was the lowest penalty he could have faced under North Carolina law given the charges for which he was convicted and his prior criminal history. (Docket No. 11, Ex. 2 (Petitioner sentenced as a Class C felon with a criminal history category of V)); N.C. Gen. Stat. § 15-1340.17(c) and (e)(lowest minimum sentence in mitigated range for Class C

felony with record level V is 90 months, corresponding maximum is 117 months). It is not immediately clear why any reasonable person would have rejected this offer to face the possibility of 522 months of imprisonment no matter when they learned of the situation.

Petitioner does state that the objective of any defendant facing a habitual felon charge is to have that charge dropped in return for a plea to the underlying charges without the habitual felon enhancement. He feels that his attorney should have accomplished this goal in his case, but has produced no proof that this was possible, i.e., that the prosecutor made such an offer or that he would have accepted such a deal if it had been proposed by defense counsel. As it was, Petitioner received a considerable break in sentencing. It may well have been that this is all the prosecutor would have ever been willing to give. This is particularly true given Petitioner's extensive criminal history and the fact that, as will be discussed below, he had a prior habitual felon conviction. Petitioner has shown no error by counsel and no prejudice as to this allegation.

Petitioner also claims that his attorney should have procured a dismissal of the habitual felon indictment based on defects or errors in the indictment. He lists three such deficiencies.[1] The first predicate offense for the habitual felon charge is a

---

[1] Petitioner's motion to submit additional state court documents (docket no. 18) involves documents supporting this particular part of his ineffective assistance claim. Because the documents are brief, appear to be copies of official state court records, and are relevant to his claim, the motion will be granted.

-6-

conviction in case 87 CRS 547. The indictment lists that conviction as being one for "the felony offense of Sell or Deliver Cocaine." (Docket No. 16, Ex. 1.) Petitioner's supplemental documentation lists the conviction as being for "Deliver [sic] of Controlled Substance: Cocaine." (Docket No. 18, Ex. 6.) Petitioner's second and third alleged errors in the habitual felon indictment both involve the third predicate offense, which is one for possession of stolen goods in case 00 CRS 50712. Petitioner initially notes that the indictment lists the crime as having been committed on March 19, 2004. He states that this is an obvious error and that he was actually in jail on that date. He asserts that the crime was instead committed on March 19, 2000. Petitioner also claims that this conviction cannot be used in any event because the sentence in that case was enhanced via a prior habitual felon charge. He argues that the prior habitual enhancement was invalid because one of the predicate convictions for that enhancement was an uncounseled conviction. He reasons that the invalidity of the prior enhancement renders the underlying possession of stolen goods conviction unusable as a predicate offense for his current habitual felon conviction.

None of the alleged errors in the indictment entitle Petitioner to habeas relief. The first two alleged errors are only clerical or typographical errors. Such errors do not render an indictment deficient under either federal or North Carolina law. See, e.g., United States v. Morrow, 925 F.2d 779 (4th Cir. 1991); State v. Smith, 183 N.C. App. 492, 645 S.E.2d 231, 2007 WL 1598649,

-7-

at *5 (June 5, 2007)(unpublished). Therefore, they would not have provided a viable basis for his attorney to have had the indictment dismissed. If his attorney had pointed out the errors, Respondent very likely would have simply amended the indictment to fix them. Smith, supra. Petitioner certainly was not prejudiced by any failure to object to the errors.

Petitioner's third alleged error in the indictment also would not have provided any basis for a successful objection to the indictment. Even if his prior habitual felon conviction and sentencing enhancement was invalid[2], this would not call the underlying possession of stolen goods conviction into question. That conviction remained intact and available as a proper predicate felony for Petitioner's current habitual felon conviction. He was not prejudiced by his attorney's failure to object to any of the alleged errors in the indictment.

Petitioner next makes an assertion that his attorney labored under an actual conflict of interest. Petitioner never identifies this conflict, rendering his claim conclusory. It appears that he might not fully understand the phrase "conflict of interest," but may be using it to refer to generally deficient performance. In any event, the claim fails because Petitioner alleges no facts to support it.

Petitioner also contends that his attorney did not inform him of his right to appeal his case. Petitioner pled guilty and was

---

[2]The Court is not finding that it was or was not invalid. It does not matter for the purposes of this case.

given a sentence lower than the presumptive range of minimum sentences. He made no motion to withdrew his guilty plea. Therefore, he had no appeal as of right under North Carolina law. See N.C. Gen. Stat. § 15A-1444(a1) and (e). Further, the Supreme Court has held that the dual performance and prejudice inquiry of Strickland provides the proper framework for analyzing a claim that counsel was ineffective for failing to advise a defendant about an appeal. See Roe v. Flores-Ortega, 528 U.S. 470 (2000). There is a "duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480. Factors playing a crucial part in determining the need for consultation include whether a defendant pled guilty and whether a defendant received the sentence agreed upon in a plea agreement. Id.

Here, Petitioner pled guilty, received the exact sentence set out in his plea agreement (a sentence which was also the lowest sentence possible under North Carolina law given Petitioner's charges and criminal history), and was not eligible for an appeal as of right. Also, Petitioner, who has had a great deal of experience with the criminal justice system of North Carolina, does not claim to have asked counsel about an appeal. Under these circumstances, it cannot be said that counsel was deficient for failing to consult with Petitioner concerning a possible appeal.

There is one final claim for ineffective assistance of counsel which must be discussed. In his petition, Petitioner makes the unexplained statement that his attorney failed to raise a "discrimination issue." He explains this more fully in his response as a failure to raise "the Selective Prosecution Defense." (Docket No. 13 at 7.) This appears to be a reference to an equal protection claim that Petitioner raises as his fifth claim for relief in his federal habeas petition. That claim alleges selective prosecution in violation of the Equal Protection Clause of the United States Constitution. Primarily, Petitioner argues throughout his pleadings that eight other men who he met while incarcerated awaiting trial had criminal backgrounds similar to his, were charged with similar crimes, and were not forced to plead to a habitual felon charge. At some other points in the pleadings, he claims that his prosecution was the result of racial discrimination.

Petitioner's attorney could only have successfully raised a claim of selective prosecution/violation of the Equal Protection clause if he could show that the decision to prosecute Petitioner as a habitual felon was based on "'an unjustifiable standard such as race, religion, or other arbitrary classification.'" United States v. Armstrong, 517 U.S. 456, 464 (1996)(quoting Oyler v. Boles, 368 U.S. 448, 456 (1962)). Where, as here, racial discrimination is the alleged basis for the Equal Protection violation, it can be proved through evidence that "similarly

-10-

Case 1:08-cv-00789-TDS-DPD   Document 19   Filed 04/21/09   Page 10 of 15

situated individuals of a different race were not prosecuted." Id. at 465.

Petitioner points to no evidence of racial discrimination that would have been available to his attorney. He really has only his bare allegations that his prosecution was based on race. Petitioner does name eight other prisoners who he claims were similarly situated, but treated differently. However, Petitioner conspicuously does not claim that these men were of a different race than himself. Therefore, they are not useful to him as examples supporting his equal protection claim.

As noted earlier, Petitioner has made a motion for discovery. He seeks to use this motion to obtain information for his selective prosecution claim. In it he requests (1) information concerning the prosecutions of the eight men he lists as being similarly situated individuals who were not forced to plead to habitual felon charges, (2) the stated policy of the prosecuting District Attorney regarding habitual felon prosecutions, (3) the names, race, and prosecution information for all persons eligible to be indicted as habitual felons in Guilford County during 2005, 2006, and 2007, (4) reasons why persons from that group with certain types of records were not indicted as habitual felons, and (5) the total number of persons, listed by race, who entered North Carolina's prison system under habitual felon sentences in 2005, 2006, and 2007. (Docket No. 14.)

Discovery in habeas cases is governed by Rule 6(a) of the Rules Governing Section 2254 Cases. That rule allows discovery in

habeas cases using the Federal Rules of Civil Procedure if "the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." The United States Supreme Court has instructed that "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.'" Bracy v. Gramley, 520 U.S. 899, 908-909 (1997)(quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)). On the other hand, petitioners are not allowed to use the discovery process to conduct "fishing expeditions" for evidence to support conclusory allegations. Williams v. Bagley, 380 F.3d 932, 976 (6th Cir. 2004).

Here, Petitioner asks for specific information as to eight persons and general information from three years of State and county records. As to the eight other inmates, he has made no allegation that they were treated differently because of race or even that they are of a different race than he is. Therefore, he has made no showing that their information would be pertinent to his racial discrimination claim. He is not entitled to discovery as to these persons. As for the more general records, gathering and sorting all of the habitual felon records from Guilford County and the State of North Carolina for three years is a very broad request not supported by any specific allegations. Petitioner, lacking any actual evidence, is attempting to cast a wide net in hopes of finding some. This is exactly the sort of fishing

expedition that should not be allowed. Petitioner's motion for discovery will be denied.

In the end, Petitioner has no evidence of selective prosecution based on race and is not entitled to sift Respondent's records in an attempt to find it. This means that he has not shown that his attorney could have raised a viable selective prosecution/equal protection defense or that he erred by not doing so. Petitioner again cannot meet either the performance or prejudice prongs of the <u>Strickland</u> test.

Overall, Petitioner has not shown error by counsel or prejudice as to any of his ineffective assistance of counsel claims. Also, as the state court pointed out in denying his claims in his motions for appropriate relief, a number of his allegations contradict sworn statements he made during his guilty plea. (Docket No. 11, Exs. 4, 6.) The state court did not misapply Supreme Court precedent in denying Petitioner's ineffective assistance of counsel claims. Respondent's summary judgment motion should be granted as to his first claim for relief.

Petitioner's second through sixth claims, all of which contain challenges to the application of North Carolina's habitual felon laws, can all be addressed quickly and easily. As Respondent points out, these claims are nonjurisdictional constitutional claims which were waived by Petitioner's guilty plea. <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973). He cannot raise them directly in a federal habeas petition. Instead, Petitioner can raise these claims only by first attacking his guilty plea through the conduct

and advice of his attorney.  Id.  As already discussed, Petitioner's guilty plea was not affected by any alleged ineffective assistance of counsel.  Therefore, it was valid and it waived all of Petitioner's remaining claims.  They should be denied on this basis.

Several of Petitioner's claims also fail for a second reason.  Petitioner's third, fourth, and sixth claims assert that North Carolina's habitual felon statute violates the constitutional protections against double jeopardy and cruel and unusual punishment.  The United States Supreme Court has repeatedly upheld statutes which punish recidivism.  Spencer v. State of Texas, 385 U.S. 554, 559 (1967); Rummel v. Estelle, 445 U.S. 263 (1980).  It has specifically upheld them against challenges based on double jeopardy, freedom from ex post facto laws, due process, and general equal protection.  Spencer, 385 U.S. at 559.  It has also denied cruel and unusual punishment claims in cases far more extreme than the present case.  See, e.g., Lockyer v. Andrade, 538 U.S. 63 (2003)(25-year sentence for petty theft under "three strikes" law not cruel and unusual punishment).  Therefore, Petitioner's conviction on the habitual felon charge in no way constituted double jeopardy or cruel and unusual punishment.

Petitioner raised these claims in his second motion for appropriate relief and they were denied alternatively on their merits by the state court.  (Docket No. 11, Ex. 6.)  That decision was not contrary to and did not involve unreasonable interpretations of the established Supreme Court precedent just

-14-

Case 1:08-cv-00789-TDS-DPD   Document 19   Filed 04/21/09   Page 14 of 15

discussed. All of these claims should alternatively be denied for this reason.

**IT IS THEREFORE ORDERED** that Petitioner's renewed motion for discovery (docket no. 15) is denied and that his motion to submit state court documents (docket no. 18) is granted.

**IT IS RECOMMENDED** that Respondent's motion for summary judgment (docket no. 10) be granted, that the habeas petition (docket no. 2) be denied, and that Judgment be entered dismissing this action.

                                                /s/ Donald P. Dietrich
                                                **Donald P. Dietrich**
                                        **United States Magistrate Judge**

April 21, 2009